998 S.W.2d 703 (1999)
In the Matter of C.P., a Juvenile.
No. 10-98-035-CV.
Court of Appeals of Texas, Waco.
August 4, 1999.
*706 Paul Guillotte, Jr., Gatesville, Scott K. Stevens, Belton, for appellant.
Riley J. Simpson, Dist. Atty., Richard L. Mackay, Jr., Asst. Dist. Atty., Gatesville, for appellee.
Before Chief Justice DAVIS Justice VANCE Justice GRAY.

OPINION
REX D. DAVIS, Chief Justice.
A jury found Appellant, C.P., a juvenile, guilty of two counts of unauthorized use of a motor vehicle, two counts of debit card abuse, and one count of making a false report to an employee of a law enforcement agency. See TEX. PEN.CODE ANN. §§ 31.07, 32.31(b), 37.08 (Vernon 1998). The trial court subsequently committed her to the Texas Youth Commission for an indeterminate sentence. See TEX. FAM. CODE ANN. § 54.04 (Vernon 1998); TEX. HUM. RES.CODE ANN. § 61.084(e) (Vernon 1998).
C.P. presents four issues on appeal in which she claims that: (1) and (2) the evidence is legally and factually insufficient to support her two adjudications for debit card abuse; (3) the evidence is legally *707 and factually insufficient to support her adjudication for the July 7, 1997, unauthorized use of a motor vehicle; and (4) the trial court abused its discretion when it did not grant a severance for the July 7, 1997, count of unauthorized use of a motor vehicle.
We affirm the judgment.

FACTUAL BACKGROUND
C.P.'s father, Jack Purcell, testified that on July 7, 1997, he went to drive his car and noticed that the driver's seat was pulled "uncomfortably close" to the steering wheel.[1] Purcell testified that he saw cigarette butts in the car. Purcell stated that he immediately suspected that C.P. drove his car without his permission and that he then asked C.P. whether she drove his car without his permission. Purcell testified that C.P. initially denied the accusation but eventually admitted that she did drive his car to some friends' houses in Copperas Cove.
Purcell further testified that during November 1997, he and his wife noticed that the balance in their checking account was substantially lower than what it should have been. Purcell testified that his bank records indicated that several unauthorized withdrawals were made in Copperas Cove and El Paso, Texas, and several cities in California. Purcell testified that the unauthorized withdrawals were made in cities located alongside I-10, an interstate that leads directly toward California. He stated that the sum of these unauthorized withdrawals totaled approximately $2,400.
Purcell testified that prior to these unauthorized withdrawals, his wife received a new ATM card. Purcell testified that he and his wife had only one ATM card for their account and that his wife kept the card in her purse. Purcell stated that soon after they noticed the unauthorized withdrawals, that they discovered that their ATM card was missing. Purcell testified that his wife kept the Personal Identification Number for their ATM card on the sleeve of their ATM card and that this was most likely the way that C.P. obtained access to their checking account.
Purcell stated that during the period of the unauthorized withdrawals, C.P. ran away from home. He testified that she was subsequently located in California and returned home. Purcell testified that he did not directly ask C.P. whether she made the unauthorized withdrawals but asked C.P. what she used the money for and she replied that she used the money for clothes. Purcell further testified that the missing ATM card was not found on C.P. or her personal effects when she returned to Texas. Purcell testified that neither he nor his wife have ever recovered their missing ATM card. Purcell testified that he reported the offenses, the unauthorized use of his car in July 1997 and the unauthorized withdrawals and use of his debit card, to the police in November 1997.
The State also charged C.P. with one count of unauthorized use of a motor vehicle that occurred on September 30, 1997. The State presented evidence that C.P., along with two friends, R.J. and M.C., drove R.J.'s parents' van without their permission. At trial, R.J. testified that she took the van from her parents without their permission. R.J. further testified that she, M.C., and C.P. took turns driving the van and drove for approximately three days throughout Texas before they wrecked the van.

DEBIT CARD ABUSE
C.P.'s first and second issues on appeal claim that the evidence was legally and factually insufficient to support her two adjudications for debit card abuse because there was no evidence of the identity of the cardholder. Although these are two offenses, they are identical on appeal and we will discuss them together.
Although juvenile proceedings are considered to be civil in nature, an adjudication *708 of delinquent conduct requires proof beyond a reasonable doubt. TEX. FAM. CODE ANN. § 54.03(f) (Vernon 1998); R.X.F. v. State, 921 S.W.2d 888, 899 (Tex. App.Waco 1996, no writ). Therefore, when reviewing the legal sufficiency of the evidence for a juvenile adjudication, we must apply the criminal standard of review because the State bears the same burden of proof as it does in criminal cases. See R.X.F., 921 S.W.2d at 899 (holding that civil standard of review does not provide constitutionally sufficient review of the legal sufficiency of the evidence for an appeal from a juvenile adjudication proceeding); see also In re E.P., 963 S.W.2d 191, 193 (Tex.App.Austin 1998, no. pet.); In re A.S., 954 S.W.2d 855, 858 (Tex.App.El Paso 1997, no pet.); In re A.C., 949 S.W.2d 388, 390, n. 1 (Tex.App.San Antonio 1997, no pet.); In re M.S., 940 S.W.2d 789, 791-92, n. 2 (Tex.App.Austin 1997, no pet.). In so doing, we review the evidence in the light most favorable to the State and determine whether, based on that evidence and all reasonable inferences therefrom, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); Alvarado v. State, 912 S.W.2d 199, 207 (Tex.Crim. App.1995); Sandoval v. State, 946 S.W.2d 472, 476 (Tex.App.Corpus Christi 1997, pet. ref'd). The jury is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. Whitaker v. State, 977 S.W.2d 595, 598 (Tex. Crim.App.1998), cert. denied, ___ U.S. ___, 119 S.Ct. 878, 142 L.Ed.2d 777 (1999). When the court determines that the evidence is legally insufficient, the case should never have been submitted to a jury. Clewis v. State, 922 S.W.2d 126, 132-33 (Tex.Crim.App.1996).
Before we begin our examination of C.P's factual sufficiency complaint, we must determine what standard of review to use for a factual sufficiency review of a juvenile adjudication. In the past, some courts favored the civil standard of review for factual sufficiency questions because juvenile proceedings are theoretically civil in nature. See In re J.P.O., 904 S.W.2d 695, 699-700 (Tex.App.Corpus Christi 1995, writ denied); In re G.F.O., 874 S.W.2d 729, 731-32 (Tex.App.Houston [1 st Dist.] 1994, no writ).
Recently, the Court of Criminal Appeals harmonized the standards of review for both civil and criminal factual sufficiency questions. See Clewis, 922 S.W.2d at 129; see also, e.g. Chesnut v. State, 959 S.W.2d 308, 310 (Tex.App.El Paso 1997, no pet.). Accordingly, when we review the factual sufficiency of a juvenile adjudication, we must view the evidence without the prism of "in the light most favorable to the prosecution" and set aside the verdict only if the verdict is so contrary to the overall weight of the evidence to be clearly wrong and unjust. Clewis, 922 S.W.2d at 129; see also In re V.M.D., 974 S.W.2d 332, 347 (Tex.App.San Antonio 1998, pet. denied); D.R.H. v. State, 966 S.W.2d 618, 622 (Tex.App.Houston [14 th Dist.] 1998, no pet.); In re A.S., 954 S.W.2d 855, 860 (Tex.App.El Paso 1997, no pet.); In re A.C., 949 S.W.2d 388, 389-90 (Tex.App.San Antonio 1997, no pet.); R.X.F. v. State, 921 S.W.2d 888, 900 (Tex. App.Waco 1996, no writ). We must review all of the evidence and consider it as a whole, not just viewing it in the light most favorable to the other party. Cain v. State, 958 S.W.2d 404, 407 (Tex.Crim.App. 1997). When performing our review, we must give appropriate deference to the jury's assessment of the weight and credibility of the evidence. Whitaker, 977 S.W.2d at 598. If we reverse an adjudication based upon factual insufficiency grounds, we must detail the evidence relevant to the issue in consideration and state why the jury's finding is factually insufficient as to be manifestly unjust. Cain, 958 S.W.2d at 407; Clewis, 922 S.W.2d at 135-36 (quoting Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex.1986)). If we determine that the evidence is factually insufficient to support an adjudication, we must *709 reverse and remand the case to the trial court. Clewis, 922 S.W.2d at 135.
The elements for debit card abuse are: (1) a person with intent to obtain a benefit fraudulently; (2) presents or uses a debit card; (3) with knowledge that the card has not been issued to her; and (4) and is not used with the effective consent of the cardholder. TEX. PEN.CODE ANN. § 32.31(b)(1)(A) (Vernon 1998). "Cardholder" is defined as the person named on the face of the debit card to whom or for whose benefit the card is issued. TEX. PEN.CODE ANN. § 32.31(a)(1) (Vernon 1998).
C.P. claims that because neither the actual debit card nor a copy of the debit card was introduced into evidence and because there was no testimony concerning what name appeared on the debit card, that the evidence was legally and factually insufficient as to the identity of the cardholder and thus, was insufficient to support her adjudications. C.P. claims that no rational trier of fact could conclude that either Jack or Shirley Purcell were the "cardholder."
There is no requirement that the actual credit or debit card or a copy of the credit or debit card be admitted into evidence in order to prove the identity of the cardholder. See Harrell v. State, 852 S.W.2d 521, 523 n. 2 (Tex.Crim.App.1993); Colley v. State, 893 S.W.2d 298, 300 n. 2 (Tex.App.Houston [1st Dist.] 1995, pet. ref'd). In Colley, neither the actual credit card nor its monthly statements were admitted into evidence. Colley, 893 S.W.2d at 300 n. 2. Rather, the only evidence of the identity of the cardholder was the testimony of the victim. Id. at 300.
The evidence established that either Purcell or his wife was the "cardholder." Purcell testified that he and his wife only had one ATM card for their joint checking account. Purcell also testified that their ATM card was missing during the same time period of the unauthorized withdrawals. Purcell further testified that he and his wife did not give their consent to C.P. to use their ATM card to make any withdrawals from their checking account. The jury could have found that Purcell's testimony was sufficient to prove that either he or his wife was the cardholder. Therefore, the evidence is legally and factually sufficient.
We overrule C.P.'s first and second issues.

UNAUTHORIZED USE OF A MOTOR VEHICLE
C.P.'s third issue on appeal claims that the evidence is legally and factually insufficient to support her adjudication for unauthorized use of a motor vehicle on July 7, 1997, because there is no evidence, other than her extrajudicial confession, that the offense occurred.
As mentioned previously, an adjudication of delinquency requires proof beyond a reasonable doubt. TEX. FAM. CODE ANN. § 54.03(f) (Vernon 1998). Because the State bears the same burden of proof in a juvenile adjudication as it does in a criminal proceeding, we review a juvenile adjudication with the same standards as we would a criminal proceeding. See, e.g., R.X.F., 921 S.W.2d at 899. A defendant's extrajudicial confession alone is not sufficient to support a conviction. Williams v. State, 958 S.W.2d 186, 190 (Tex.Crim.App.1997); Emery v. State, 881 S.W.2d 702, 705 (Tex.Crim.App.1994). There must be other evidence independent of the confession that tends to prove the corpus delicti.[2]Williams, 958 S.W.2d at 190; Gribble v. State, 808 S.W.2d 65, 70 (Tex.Crim.App.1990). The independent evidence of the corpus delicti does not need to connect the defendant to the crime, be sufficient by itself to prove the crime nor be a great quantum of evidence; *710 it only needs to be some evidence which renders the corpus delicti more probable than it would be without the evidence. Williams, 958 S.W.2d at 190; Emery, 881 S.W.2d at 705; Chambers v. State, 866 S.W.2d 9, 16 (Tex.Crim.App.1993); Gribble, 808 S.W.2d at 70. When determining whether the evidence tends to prove the corpus delicti of a crime more probable than not, we consider "all the record evidence, other than [the defendant's] extrajudicial confession," in the light most favorable to the jury's verdict. Fisher v. State, 851 S.W.2d 298, 303 (Tex.Crim.App. 1993); see also Mestiza v. State, 923 S.W.2d 720, 726 (Tex.App.Corpus Christi 1996, no pet.).
A person commits the offense of unauthorized use of a motor vehicle when she intentionally or knowingly operates a motor vehicle without the effective consent of the owner. TEX. PEN.CODE ANN. § 31.07 (Vernon 1998). The corpus delicti of unauthorized use of a motor vehicle is the fact that a motor vehicle was driven without the owner's consent. Purcell testified that on July 7, 1997, his car's seat was moved so that it was "uncomfortably close" to the steering wheel and that there were cigarette butts in the car. This is some evidence which tends to prove the corpus delicti of the crime more probable than it would be without the evidence.
We overrule C.P.'s third issue.

MOTION TO SEVER
C.P.'s fourth issue on appeal claims that the trial court abused its discretion when it denied her motion to sever the July 7, 1997, offense of unauthorized use of a motor vehicle from the September 30, 1997, offense of unauthorized use of a motor vehicle.[3] C.P. claims that the two offenses were not part of the same transaction or episode and did not involve the same facts or issues. C.P. claims that if the trial court granted her motion and tried the July 7, 1997, offense separately, that evidence of the September 30, 1997, offense would not be admissible under Texas Rule of Evidence 404(b) and vice versa. Thus, the trial court's denial of her motion to sever was unduly prejudicial.
Texas Rule of Civil Procedure 41 states that "[a]ny claim against a party may be severed and proceeded with separately." See TEX. FAM.CODE ANN. § 51.17 (Vernon 1998) (Texas Rules of Civil Procedure govern juvenile adjudications). Severance of claims under Rule 41 rests within the sound discretion of the trial court. TEX.R. CIV. P. 41; Liberty Nat'l Fire Ins. Co. v. Akin, 927 S.W.2d 627, 629 (Tex. 1996); Guaranty Fed. Sav. Bank v. Horseshoe Operating Co., 793 S.W.2d 652, 658 (Tex.1990). The controlling reasons why a trial court grants a severance are to do justice, avoid prejudice, and further convenience. Guaranty, 793 S.W.2d at 658.
A trial court properly exercises its discretion in severing claims when: (1) the controversy involves more than one cause of action; (2) the severed claim is one that could be asserted independently in a separate lawsuit; and (3) the severed actions are not so interwoven with the other claims that they involve the same facts and issues. Liberty, 927 S.W.2d at 629; Guaranty, 793 S.W.2d at 658. When all the facts and circumstances of the case require separate trials in order to prevent manifest injustice, when there is no fact or circumstance that supports or tends to support a contrary conclusion, and when the legal rights of the parties will not be prejudiced thereby, then there is no room for the exercise of discretion. In re Foremost Ins. Co., 966 S.W.2d 770, 771 (Tex. App.Corpus Christi 1998, no pet.); Texas Farmers Ins. Co. v. Stem, 927 S.W.2d 76, 78-79 (Tex.App.Waco 1996, no pet.). The rule then imposes upon the court a duty to order a separate trial. Texas *711 Farmers Ins., 927 S.W.2d at 79; See Foremost, 966 S.W.2d at 771.
We must first examine whether evidence of the September 30, 1997, offense would be admissible during C.P.'s trial for the July 7, 1997, offense. If the September 30, 1997, offense would be admissible during C.P.'s trial for the July 7, 1997, offense, then it is likely that the trial court's refusal to sever the two offenses was not an abuse of discretion. See In re Foremost Ins. Co., 966 S.W.2d at 772 (trial court abused its discretion when it denied severance because a simultaneous trial would result in the admission of evidence for one claim that would normally not be admissible as to the other claim); cf. Liberty Nat'l Fire Ins. Co., 927 S.W.2d at 630 (trial court did not abuse its discretion when it denied severance because claims were so interwoven and most of the evidence was admissible as to both claims).
Texas Rule of Evidence 404(b) states that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." However, the State may seek to admit the evidence for "other purposes," such as those outlined in Rule 404(b). "Other purposes" include proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. TEX.R. EVID. 404(b). The Court of Criminal Appeals has held that background evidence is an "other purpose" and an exception to Rule 404(b). Mayes v. State, 816 S.W.2d 79, 86 (Tex.Crim.App.1991). Before background evidence is admissible under 404(b), it must be relevant under Rule of Evidence 401. Rogers v. State, 853 S.W.2d 29, 32 (Tex.Crim.App.1993). If relevant, then the issue is whether the background evidence should be admitted as an exception to Rule 404(b). Id.
The Court of Criminal Appeals has categorized background evidence into two categories: (1) same transaction contextual evidence and (2) background contextual evidence. Mayes, 816 S.W.2d at 86-87; Rogers, 853 S.W.2d at 32. Same transaction contextual evidence is admissible as an exception to Rule 404(b) where "several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony, whether direct or circumstantial, of any one of them cannot be given without showing the others." Mayes, 816 S.W.2d at 86-87 n. 4. Same transaction contextual evidence should only be admitted when the facts and circumstances of the instant offense would make little or no sense without also bringing in this evidence. Rogers, 853 S.W.2d at 33. On the other hand, background contextual evidence "fill[s] in the background of the narrative and give[s] it interest, color, and lifelikeness." Mayes, 816 S.W.2d at 87; DeLeon v. State, 937 S.W.2d 129, 135 (Tex.App.Waco 1996, pet. ref'd). This type of evidence is admitted because of its "salutary effect on the jury's comprehension of the offense in question." Mayes, 816 S.W.2d at 87.
To determine whether evidence of the September 30, 1997, offense would be admissible as an exception to Rule 404(b) during the trial of the July 7, 1997, offense, it must first be relevant. Rogers, 853 S.W.2d at 32. Relevant evidence is evidence that has a tendency to make the existence of any fact more probable or less probable than it would be without the evidence. TEX.R. EVID. 401. In other words, it is evidence that is of consequence to the determination of the action in question. Mayes, 816 S.W.2d at 84.
In this case, there is no similarity or connection between the two crimes other than the fact that they are two counts of the same offense. The two crimes occurred more than two and a half months apart and alleged the unauthorized use of two different vehicles, owned by two different owners. The circumstances surrounding the September 30, 1997, crime, in which C.P. and her friends took R.J.'s parents' van and joy-rode throughout Texas, *712 do not make the existence of her July 7, 1997, crime, in which she drove her parents' car to some friends' houses, more probable than not. Consequently, evidence of the September 30, 1997, crime is not relevant to the July 7, 1997, crime. Because evidence of the September 30, 1997, crime is not relevant, there is no need to determine whether the evidence would fit within an exception to Rule 404(b).
Keeping in mind the factors enunciated in Liberty National Fire Insurance Co. and the controlling principles behind severance, we hold that the trial court abused its discretion when it denied C.P.'s motion to sever. First, C.P.'s two counts of unauthorized use of a motor vehicle arose from two separate transactions that were not part of the same criminal episode. Second, the State could have easily tried the July 7, 1997, offense in an independent trial. The July 7, 1997, offense did not involve the same witnesses as the September 30, 1997, offense. Lastly, the two offenses were not so interwoven with each other that it would be impossible to try the two offenses separately. Each offense required the determination of different facts and issues. There is no apparent reason why the State needed to try both offenses simultaneously. All the facts and circumstances dictate that the trial court should have severed the offenses and ordered separate trials. Because there are no reasons why a simultaneous trial would further justice and neither the State nor C.P. would be prejudiced by a separate trial, we hold that the trial court abused its discretion when it denied C.P.'s motion to sever.
We must now determine whether the trial court's error was harm that requires reversal. We apply the test as found in Rule 44.1(a) and disregard any error that did not probably cause the rendition of an improper judgment. TEX. R.APP. P. 44.1(a); In re D.V., 955 S.W.2d 379, 380 (Tex.App.San Antonio 1997, no pet.) (use civil harm analysis when the State proceeds with indeterminate sentencing); In re G.M.P., 909 S.W.2d 198, 210 (Tex.App.Houston [14th Dist.] 1995, no pet.) (civil standard for harmless error applies to juvenile delinquency adjudications).
After examining the entire record, we cannot say that the simultaneous trial caused the rendition of an improper judgment. It is true that the simultaneous trial allowed the State to introduce evidence that otherwise would not be admissible during a separate trial on the July 7, 1997, offense. However, the State presented legally sufficient and factually sufficient evidence to support each individual adjudication of unauthorized use of a motor vehicle.
Further, it is unlikely that the inclusion of one additional offense of unauthorized use of a motor vehicle affected the trial court's decision to commit C.P. to the Texas Youth Commission for an indeterminate sentence. Excluding C.P.'s adjudication of the July 7, 1997, offense, the jury adjudicated C.P. guilty of two counts of debit card abuse, one count of making a false statement to an employee of a law enforcement agency, and the September 30, 1997, offense of unauthorized use of a motor vehicle. Therefore, we hold that the trial court's error did not cause the rendition of an improper judgment.
We overrule C.P.'s fourth issue.
For the reasons stated, we affirm the trial court's judgment.
NOTES
[1] We will only state the facts that are pertinent to C.P.'s issues on appeal.
[2] The corpus delicti of a crime consists of the fact that the crime in question has been committed by someone. McDuff v. State, 939 S.W.2d 607, 614 (Tex.Crim.App.1997) (en banc), cert. denied, ___ U.S. ___, 118 S.Ct. 125, 139 L.Ed.2d 75 (1997).
[3] C.P.'s motion requested that the trial court sever all the offenses. However, for reasons unknown, C.P. complains on appeal only about the denial of the requested severance of the July 7, 1997, unauthorized use offense.